Affirmed and Memorandum Opinion filed February 3, 2005









Affirmed and Memorandum Opinion filed February 3,
2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00136-CR

____________

 

LONNIE MACK BROOKS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 306th
District Court

Galveston County, Texas

Trial Court Cause No. 88JV0310

 



 

M E M O R A N D U M  O P I N I O N

Appellant, while incarcerated in the Texas
Department of Corrections, requested DNA testing of evidence connected with the
1991 murder for which he was convicted. 
Acting pursuant to chapter 64 of the Texas Code of Criminal Procedure,
the trial court ordered the testing but denied further relief after finding
that, had the results been available, it was not reasonably probable that
appellant would not have been convicted. 
In his sole issue on appeal, appellant challenges the trial court’s
finding.  We affirm.








Factual
and Procedural Background

While appellant
was a juvenile, he was convicted for the 1991 murder of Roy Lee Payne.  The trial court sentenced appellant to thirty
years’ confinement, served first with the Texas Youth Commission and, since
1993, with the Texas Department of Criminal Justice.  In 2001, appellant filed a motion for DNA
testing.  The State was initially unable
to locate any biological evidence connected with appellant’s case.  However, 
a blood-stained bandanna was eventually located in an unrelated
case.  Although the appellate record is
sparse, it appears police obtained the bandanna, which was wrapped around the
murder weapon,[1]
when they arrested another man.  DNA
testing revealed the blood was from an unidentified female and an unidentified
male; neither blood sample matched the sample taken from appellant.  After holding a hearing, the trial court
determined that, had these DNA testing results been available during
appellant’s trial, it was not reasonably probable that appellant would not have
been convicted.  The court denied further
relief.

Standard of Review








Appellant filed his motion for DNA testing
pursuant to chapter 64 of the Texas Code of Criminal Procedure.  We review challenges to a trial court’s
findings under article 64.04 of that chapter using the bifurcated Guzman
standard of review.  Baggett v. State,
110 S.W.3d 704, 705–06 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d)
(stating standard for  challenges to
trial court’s article 64.04 findings). 
This standard requires a reviewing court to give almost total deference
to the trial court’s determination of historical fact issues that turn on
credibility or demeanor, while reviewing other application-of-law-to-fact
issues de novo.  Rivera v. State,
89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 2002)). 
“Although there may be subsidiary fact issues that are reviewed deferentially,
the ultimate question of whether a reasonable probability exists that
exculpatory DNA tests would prove innocence is an application of law to fact
question that does not turn on credibility and demeanor and is therefore
reviewed de novo.”  Baggett, 110
S.W.3d at 706 (citing Rivera, 89 S.W.3d at 59).

Analysis

We begin our de novo review of the trial
court’s finding with the requirements in chapter 64.  Under article 64.04, the trial court must
determine “whether, had the results been available during the trial of the
offense, it is reasonably probable that the person would not have been
convicted.”  Tex. Crim. Proc. Code art. 64.04.  Thus, to obtain a favorable finding,
appellant must have established by a preponderance of the evidence that, had
the DNA results been available in his original trial, there was a reasonable
probability he would not have been convicted. 
Kutzner v. State, 75 S.W.3d 427, 438–39 (Tex. Crim. App.
2002).  “A reasonable probability is a
probability sufficient to undermine confidence in the outcome.”  Strickland v. Washington, 466 U.S.
668, 694 (1984); Baggett, 110 S.W.3d at 706.  Post-conviction DNA results that merely
“muddy the waters” do not establish a probability sufficient to undermine
confidence in the outcome.  See Kutzner,
75 S.W.3d at 439.         Also, a reasonable probability does not
exist “if there is sufficient evidence, other than the evidence in question, to
establish guilt.”  Baggett, 110
S.W.3d at 706 (citing Rivera, 89 S.W.3d at 60); Wright v. State,
No. 14-03-01060-CR, 2004 WL 502906, at *2 (Tex. App.—Houston [14th Dist.] Mar.
16, 2004, pet. ref’d) (not designated for publication).  Thus, we will uphold the trial court’s
finding if the DNA results fail to demonstrate a reasonable probability of
innocence and there was sufficient evidence, other than the evidence in
question, to establish guilt.”  Id.  

1.       The
DNA results do not undermine confidence in the outcome








With this framework in mind, we turn to
the DNA results in appellant’s case.  As
mentioned previously, the DNA results were obtained from the blood-stained
bandanna found wrapped around the murder weapon.  The results established the blood was not
from appellant, but from an unidentified female and an unidentified male.  Appellant has not shown how this evidence
would make it “more or less probable” that he murdered Roy Payne.  See Baggett, 110 S.W.2d at 707
(holding test result showing ‘inconclusive male pattern’ did not establish a
reasonable probability of innocence). 
The fact that the blood on the bandanna was not appellant’s does not
establish that he was not, in fact, the person who shot and killed Roy
Payne.  See Rivera, 89 S.W.3d at
60 (finding that the absence of the victim’s DNA under appellant’s
fingernails  would not indicate innocence).  The bandanna has a tenuous connection with
the murder of Roy Payne.  In fact, the
only connection between the bandanna and the murder weapon is that the bandanna
was found wrapped around the presumed murder weapon in a completely unrelated
arrest.  Regardless, the weapon does not
appear to have been a key piece of evidence leading to appellant’s conviction.[2]  In appellant’s case, the DNA results merely
“muddy the waters” and do not undermine confidence in the outcome of
appellant’s original trial.  See
Kutzner, 75 S.W.3d at 436–37 (finding that the absence of appellant’s
DNA from the physical evidence connected with the crime would “merely muddy the
waters.”).

2.       Other
sufficient evidence exists to establish guilt

Moreover, despite the paucity of the
appellate record, it appears there was other evidence presented at appellant’s
trial that establishes his guilt. 
Appellant acknowledges he was identified as the shooter through
eyewitness testimony.  The testimony of
eye witnesses to the crime likely would have been sufficient evidence to
establish appellant’s guilt.  But, in the
absence of a record of those proceedings, we cannot say appellant carried his
burden of showing the DNA results would have made it reasonably probable he
would not have been convicted.  

Conclusion








At best, the DNA results would have
muddied the waters at appellant’s original trial; the results do not make it
reasonably probable that he would not have been convicted.  And, on this record, we cannot say the eye-witness
testimony identifying appellant does not otherwise sufficiently establish
appellant’s guilt.   For these reasons,
we find the trial court properly denied appellant further relief and overrule
his sole point of error.

 

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed February 3, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.

Do
Not Publish — Tex. R. App. P.
47.2(b).

 

 











[1]  Even the
status of the gun as the murder weapon is not entirely clear from the record
due to an inconclusive ballistics match between the gun and the bullets removed
from Roy Payne’s body.  For simplicity,
we will refer to the gun found wrapped in the blood-stained bandanna as the
murder weapon.





[2]  No direct
appeal was taken from appellant’s original conviction and no record remains of
the proceedings of his original trial. 
At the hearing on appellant’s motion requesting DNA testing, his counsel
acknowledged it was uncertain whether the gun was even introduced into evidence
at appellant’s trial.  However, appellant
testified that he remembered a gun being introduced as evidence.